TIFFT *v.* CITY OF BUFFALO.

*(Superior Court of Buffalo, General Term.* November 19, 1889.)

1. PUBLIC IMPROVEMENTS—ASSESSMENTS.

 The charter of Buffalo, (title 9, § 18,) as originally passed, provided that no work or improvement, the probable cost whereof exceeded $500, should be ordered until notice of intention to order it should first be published six times in the official paper. Section 19 prohibited the city from entering into a contract for any work exceeding said sum until a notice had been published in the official paper inviting sealed proposals for the work, or until the assessment should be confirmed. Laws 1878, c. 395, amended section 19 so that, in case a majority of the property owners on the street where the work was to be done petitioned for the improvement, publi-

cation of such notice might be dispensed with, and the contract might be let before confirmation of the assessment. Laws 1879, c. 486, excepted from the requirements of section 19, as to publication of notice for proposals and confirmation of assessments, contracts for street sprinkling, but Laws 1885, c. 181, repealed this provision, and left the section as it stood before 1879. *Held,* that a notice of the intention to provide for sprinkling the streets was essential to the validity of an assessment for that purpose, as the amendments mentioned did not affect section 18.

2. SAME—CLOUD ON TITLE.

Though an assessment is no lien on land until the roll is delivered to the city treasurer, as provided by the charter, (title 7, § 1,) equity will enjoin its enforcement, if illegal, as a cloud on title may be prevented as well as removed.

3. SAME.

As proof of publication of the notice mentioned need not be attached to the assessment roll, and there is nothing in the roll to indicate a non-compliance with the statute, the assessment apparently constitutes a lien, and the rule that equity will not relieve against that which is not apparently a lien does not apply.

Appeal from special term, Erie county.

Action by W. F. Tifft against the city of Buffalo. Judgment was entered for defendant, and plaintiff appeals.

Argued before BECKWITH, C. J., and TITUS, J.

*Stilwell & Hill,* for appellant. *William F. Worthington,* for respondent.

TITUS, J. This action was brought to vacate and set aside an assessment exceeding $500, for sprinkling Allen street, on which the plaintiff owns land assessed for the work. No resolution of intention was adopted by the common council before ordering the work, and no notice of intention was published in the official paper. It is claimed by the plaintiff that such work cannot be ordered by the common council without such preliminary proceedings being had. It thus becomes necessary to examine the provisions of the charter applicable to such work to determine the question. Sections 18 and 19 of title 9, as originally passed by the legislature, read as follows: "Sec. 18. No work or improvements specified in this act, except those mentioned in section seven of this title, the expense of which shall be estimated by the common council, to exceed five hundred dollars, shall be ordered unless by the vote of two-thirds of all the members of the common council, after publication in six successive numbers of the official paper, of the intention to order such work or improvement. Sec. 19. The city shall not enter into a contract with any person for the doing or making a work or improvement, at a price exceeding five hundred dollars, until they shall have published a notice in five successive numbers of the official paper, inviting sealed proposals to do the work or make the improvement, pursuant to the plans, specifications, or other proper description of the work or improvement on deposit in the office to be specified in the notice, nor until the assessment therefor shall have been confirmed." As the charter then stood, before the contract could be let by the city, or the work done, the expense of which exceeded $500, it was necessary—*First,* to publish, for six successive times, in the official paper, notice of the intention to order the work; *second,* to order the work by a vote of two-thirds of all the members of the common council; *third,* before entering into a contract for such work to publish notice inviting sealed proposals; and, *fourth,* to make and confirm the assessment for such work. By chapter 395 of the Laws of 1878 section 19 was amended so as to read: "The city shall not enter into any contract with any person for the doing of any work or improvement at a price exceeding two hundred dollars, until it shall have published in five successive numbers of the official paper, inviting sealed proposals to do the work or improvement, except upon a petition of a majority of the owners of property fronting that portion of the street or alley along which such improvement is to be made, when the city may grant the prayer of the petitioners, omitting the publication above specified, and shall not enter into a contract for doing or making any such work or im-

provement for a price exceeding the sum of five hundred dollars, until the assessment therefor has been confirmed, except upon a majority petition of property owners, as provided by section eight of this title, when the city may contract for such work upon ordering the improvement petitioned for."

It is clear to my mind that this section, as amended, did not dispense with the ordering of the work in the manner specified in section 18, nor was it at all inconsistent with the provisions of that section. I am not aware that any case ever arose under the section as amended in 1878, or that any construction was ever given to it by a judicial tribunal; but it must have been considered as not authorizing the city to enter into a contract for such work without first complying with the provisions of section 18, as the legislature, in the following year, again amended this section, giving the city the power now contended for. By chapter 486 of the Laws of 1879 a radical change was made in this section 19, by excepting from its requirements, as to publishing for sealed proposals, and confirming the assessment before entering into a contract, the work of sprinkling and watering streets, in the following explicit language: "The common council may order any street sprinkled or watered, and the city may enter into a contract therefor, upon the petition of a majority of the resident owners upon said street, before the assessment therefor shall have been confirmed." If it is claimed that the work of sprinkling and watering streets could be done without publishing notice of intention, by virtue of the amendment, and a compliance with the provisions of section 18 dispensed with, which seems to me doubtful, then it would follow that the amendment which was passed in 1885 (chapter 181) took away the power therein conferred upon the common council, and restored the section. The amendment of 1885 struck from the section the language last above quoted, and left it, so far as the power of the city to contract without previous publication of the notice of intention to order the work is concerned, substantially as it was after the amendment of 1878. The reference in section 18 to section 7 does not relieve the difficulty, for clearly the provisions of that section were not intended to apply to the work of sprinkling and watering streets, because it was in the charter, as originally enacted, before the question of sprinkling the streets had been introduced. Besides, it particularly specifies what work may be done on petition. If the legislature had intended to include the sprinkling of streets it would have manifested such intent either in general or particular language, but no general words or phrases are used. The things which may be done on petition are mentioned, and nothing is left to inference or speculation. If the intention of the legislature is to be gathered from the course of legislation upon this subject, it seems clear that by repealing the clause which gave authority to the city by the amendment of 1879 it intended to restrict the common council in the exercise of such power, and to require a compliance with the provisions of section 18 before making the assessment. If I am right in the construction given to these two sections, then the omission to publish notice of intention is not a mere irregularity, but a failure of the common council to pursue the method prescribed by the charter in making the assessment by the omission of a very important step in ordering the work done. The city can only exercise such power in assessing and collecting taxes as the statute confers, and in the exercise of such power it must follow the requirements of the statutes in all things essential. *Mushlitt* v. *Silverman,* 50 N. Y. 360; *Merritt* v. *Village of Portchester,* 71 N. Y. 309. It will not, I think, be claimed, if the construction here given is correct, that the city had any power to order the work or make a valid assessment without first complying with the provisions of section 18. *Stuart* v. *Palmer,* 74 N. Y. 183; *In re City of Buffalo,* 78 N. Y. 362. It is no answer to the requirement of the statute that a compliance with it would cause delay in doing necessary work. The publication only requires one week's time, and certainly an unimportant work like sprinkling streets would not suffer by such a delay. Besides, the desire

for haste should not lead us to overlook or omit an important requirement of the statute in levying taxes and assessments upon the property of the citizen. While the statute, as I conceive it to be, may be an unnecessary hindrance, so long as it is a part of the charter, a compliance with it is the only safe and proper course; nor should the fact that the amount of the plaintiff's tax is small influence the disposition of the case, when the results which follow are of so much importance to every tax-payer. If the common council has acted without authority, the error cannot be corrected too soon.

The defendant claims that the assessment is not a lien on the plaintiff's property until the assessment roll is delivered to the city treasurer, and consequently the action was prematurely brought. Section 1, tit. 7, charter. I do not think the objection is well taken. A court of equity may entertain a suit, not only to remove a cloud upon title, but also to prevent it. *Sanders* v. *Village of Yonkers*, 63 N. Y. 489. The counsel for the defendant insists that if the notice of intention to order the work should have been published, then the invalidity appears upon the face of the assessment, and a suit in equity will not lie to remove what is not an apparent lien. *Wells* v. *City of Buffalo*, 80 N. Y. 253; *Association* v. *City of Buffalo*, 43 Hun, 127. This statement of the law is undoubtedly correct, but the difficulty lies in its application to the facts of this case. It is not clear how the invalidity could appear on the face of the assessment. Proof of publication is not required to be attached to the roll, and nothing to indicate that the statute has not been complied with appears. The common council had authority to order the work and make a valid assessment, and the only way its invalidity could be made to appear would be by proof *aliunde* the record. The case does not purport to contain all the evidence given on the trial, but it seemed to be assumed that evidence was given to establish the invalidity of the assessment, and the trial judge so finds in his report of the findings. It follows from what has been said the judgment should be reversed, and as to this plaintiff the assessment vacated and set aside, with costs.